UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY HARRY RACINE

                          Plaintiff,

          v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                          Defendant.

_____

**REPORT
and
RECOMMENDATION**

**15-CV-0097A(F)**

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER
                              Attorneys for Plaintiff
                              ELIZABETH HUANGS, of Counsel
                              6000 North Bailey Avenue
                              Suite 1A
                              Buffalo, New York 14226

                              JAMES P. KENNEDY
                              ACTING UNITED STATES ATTORNEY
                              Attorney for Defendant
                              ELIZABETH ROTHSTEIN
                              Assistant United States Attorney, of Counsel
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202, and
                              STEPHEN P. CONTE
                              Regional Chief Counsel
                              United States Social Security Administration
                              Office of the General Counsel, of Counsel
                              26 Federal Plaza
                              Room 3904
                              New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## <u>JURISDICTION</u>

This action was referred to the undersigned by Honorable Richard J. Arcara[2] on July 1, 2015. (Doc. No. 9). The matter is presently before the court on motions for judgment on the pleadings, filed on June 30, 2015, by Plaintiff (Doc. No. 8), and on November 25, 2015, by Defendant (Doc. No. 15).

## <u>BACKGROUND</u>

Plaintiff Timothy Racine, ("Plaintiff" or "Racine"), seeks review of Defendant's decision denying him Supplemental Security Income ("SSI") ("disability benefits") under, Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of left shoulder pain, left leg deep vein thrombosis, and a severe depressive disorder, that Plaintiff's knee complaints and asthma were not severe impairments, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 17-25). [3] Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform light work with the limitations of occasional interaction with the public, occasional kneeling, crawling, and stooping and no overhead reaching. (R. 19). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date of January 1, 1990, through the date of the Administrative Law Judge's decision on August 19, 2013.

---

[2] Effective August 17, 2017, Plaintiff's case was reassigned to Hon. Michael A. Telesca. (Doc. No. 19).
[3] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

## PROCEDURAL HISTORY

Plaintiff filed his application for disability benefits on November 1, 2011 (R. 158), that was initially denied by Defendant on January 12, 2012, and, pursuant to Plaintiff's request filed February 16, 2012 (R. 102), a hearing was held before Administrative Law Judge Timothy M. McGuan ("McGuan" or "the ALJ"), on April 24, 2013, in Buffalo, New York. (R. 31-73). Plaintiff, represented by Kenneth Hiller, Esq. ("Hiller"), appeared and testified at the hearing (R. 33-56), along with vocational expert ("VE") Josiah Pearson ("Pearson" or "VE"). The ALJ's decision denying Plaintiff's claim was rendered on August 19, 2013. (R.16-25). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on December 10, 2014. (R. 1-5). This action followed on February 3, 2015, with Plaintiff alleging that the ALJ erred by failing to find him disabled. (Doc. No. 1).

On June 30, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 9) ("Plaintiff's Memorandum"). Defendant filed, on November 25, 2015, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 15) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on January 14, 2016 ("Plaintiff's Reply Memorandum") (Doc. No. 18. Oral argument was deemed unnecessary. Based on the following, Plaintiff's motion for judgment on the pleadings should be DENIED; Defendant's motion for judgment on the pleadings should be GRANTED.

## FACTS[4]

Plaintiff was born on January 5, 1960, completed eighth grade, and lives with friends. (R. 190). Plaintiff alleges that he is not able to work as a result of depression, and knee and back impairments. (R. 199).

Relevant to Plaintiff's medical history and alleged impairments, on February 10, 2010, Richard Lewis, M.D. ("Dr. Lewis"), reviewed a magnetic resonance imaging scan ("MRI") of Plaintiff's right knee that revealed a chronic tear of Plaintiff's anterior cruciate ligament ("ACL"). (R. 283).

On February 22, 2010, Dr. Lewis opined that Plaintiff's knee pain was a result of a patellar abnormality and recommended that Plaintiff undergo arthroscopic debridement surgery (removal of damaged cartilage or bone). (R. 306).

On April 9, 2010, Singh Vani, M.D. ("Dr. Vani"), completed a physical examination of Plaintiff and diagnosed Plaintiff with hypertension, chronic obstructive pulmonary disease ("COPD"), asthma and chronic knee pain. (R. 309).

 On January 3, 2012, George Alexis Sirotenko, D.O., an osteopath, completed a consultative internal medical examination on Plaintiff and noted that Plaintiff walked with a normal gait, required no assistance getting on and off of the examination table, and evaluated Plaintiff with probable ligamentous instability of the right knee, degenerative back pain, and a history of asthma. (R. 275). Dr. Sirotenko assessed Plaintiff with moderate limitation to repetitive kneeling, squatting or bending, climbing stairs, inclines or ladders on a repetitive basis, mild limitations to lifting objects overhead with more

---

[4] Taken from the pleadings and administrative record.

3

than a moderate degree of weight, and noted that Plaintiff was able to squat 75% and should avoid respiratory triggers to prevent exacerbation of Plaintiff's asthma. (R. 275).

On January 6, 2012, Lawrence Liebman, M.D. ("Dr. Liebman"), reviewed an X-ray of Plaintiff's lumbar spine that revealed moderate straightening, and a long calcification on Plaintiff's L3 –L5[5] disc segment. (R. 328).

On February 8, 2012, Plaintiff visited Barbara Worthington, M.D. ("Dr. Worthington"), for back pain, right knee pain, history of blood clots, arthritis and depression. (R. 337). Dr. Worthington diagnosed Plaintiff with chronic lower back pain, chronic right knee pain, right elbow arthritis and shortness of breath. *Id.*

On March 11, 2012, Plaintiff visited Our Lady of Victory Hospital Familycare Center ("OLV"), with arm pain where Tara Manteghi, M.D. ("Dr. Manteghi"), completed an ultrasound scan of Plaintiff's right elbow, and diagnosed Plaintiff with acute arm pain, arthralgia (joint pain), bursitis, and prescribed Lortab (pain). (R. 341).

On March 15, 2012, Plaintiff visited Pardeep Dhanoa, M.D. ("Dr. Dhanoa"), for a follow-up examination after Plaintiff's recent visit to OLV, and diagnosed Plaintiff with edema (swelling) of Plaintiff's left leg, asthma, gastrointestinal esophageal reflux disease ("GERD"), anemia, nondependent tobacco disorder and depression. (R. 346-47).

On March 22, 2012, Plaintiff reported to Dr. Dhanoa for a follow-up examination, and completed a patient health questionnaire where Plaintiff reported feeling down, and tired with little energy (R. 349). Dr. Dhanoa evaluated Plaintiff with moderate

---

[5] L3 and L5 are numbered segments of the lumbar section of an individual's spine.

4

depression, prescribed Zoloft, and referred to Lakeshore Behavioral Health ("Lakeshore") for psychiatric counseling.  (R. 357).

On March 27, 2012, Plaintiff visited Lakeshore for a mental health intake assessment where Anjanette Surma ("Ms. Surma"), a licensed mental health counselor noted that Plaintiff reported he wanted to "end it all," and was depressed after losing his sister and brother to suicide and breaking up with his girlfriend.  (R. 380).  Ms. Surma evaluated Plaintiff with fair insight, impaired judgment, and "questionable judgment" (R. 380), and diagnosed Plaintiff with Axis I[6] major depressive disorder, recurrent severe, rule out panic disorder with agoraphobia (fear of leaving home), episodic alcohol abuse, and cocaine abuse in remission, Axis III asthma, arthritis, anemia, chronic pain, vascular disease, and Axis IV issues that include housing, social and primary support. (R. 381).

On April 5, 2012, Plaintiff sought treatment from the Comprehensive Psychiatric Emergency Program ("CPEP"), at Erie County Medical Center ("ECMC"), in Buffalo, New York, where John Importa, M.D. ("Dr. Importa") completed a mental health evaluation on Plaintiff and noted that Crisis Services recommended Plaintiff to CPEP after Plaintiff reported that he was thinking of harming himself and had cut his arms.  (R. 391).  Dr. Importa diagnosed Plaintiff with Axis I adjustment disorder with depressed

---

[6] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors, and Axis V, global assessment of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

mood, non-dependent alcohol intoxication, Axis II cluster B[7] traits, Axis IV social problems.  (R. 392).

On April 11, 2012, Plaintiff reported to Lakeshore for mental health counseling where Ms. Surma noted that Plaintiff was living in a rooming house, and reported increased irritability, and feeling discouraged and unhappy.  (R. 411).

On April 25, 2012, Balwant Nagra, M.D. ("Dr. Nagra"), completed an initial psychiatric evaluation on Plaintiff and diagnosed Plaintiff with Axis I major depressive disorder, cocaine and alcohol abuse, Axis III hypertension, asthma and chronic pain, Axis IV moderate psychosocial and environmental problems, and noted that Plaintiff agreed to a voluntary admission at ECMC for psychiatric treatment.  (R. 415).

On April 27, 2012, Dr. Nagra recommended that Plaintiff voluntarily admit himself to CPEP, and upon admission, Plaintiff was diagnosed with a major depressive disorder, history of alcohol and cocaine abuse, chronic back pain, hypertension and asthma.  (R. 386).  Upon Plaintiff's discharge on April 29, 2012, Plaintiff was listed in stable condition and prescribed Remeron (anti-depressant), Ambien and Protonix (anti-acid).  (R. 386).

On December 31, 2012, Dr. Nagra and Ms. Surma provided mental health counseling for Plaintiff.  (R. 417-19).

On December 26, 2012, Fatai Gbadamosi, M.D. ("Dr. Gbadamosi"), a psychiatrist with Evergreen Health Services ("Evergreen"), completed a physical examination on

---

[7] Cluster B traits are a group of personality disorders characterized by emotional, dramatic, and erratic personality disorders that include antisocial personality disorder, borderline personality disorder, histrionic personality disorder and narcissistic personality disorder, *i.e.*, traits that inhibit social interaction with others.

Plaintiff and diagnosed Plaintiff with anxiety, asthma, deep vein thrombosis ("DVT"), GERD, tobacco dependence, and right knee pain. (R. 425-26). Dr. Gbadamosi recommended that Plaintiff stop smoking and discontinue or limit his alcohol intake. *Id.*

On January 2, 2013, an X-ray of Plaintiff's right knee showed bipartite patella[8] with no acute fracture. (R. 435).

On January 6, 2013, Plaintiff was transported to ECMC by paramedics and reported that he was celebrating his birthday and took a Lortab to alleviate his shoulder pain while drinking alcohol. (R. 395). Dr. Nagra completed an initial assessment on Plaintiff, and evaluated Plaintiff with poor insight and limited judgment, and average intellectual functioning. (R. 395). Calvert Warren, M.D. ("Dr. Warren"), completed an intake assessment of Plaintiff and diagnosed Plaintiff with Axis I polysubstance dependence, substance induced mood disorder, and Axis II shoulder pain. (R. 399).

On January 29, 2013, Plaintiff visited Dr. Gbadamosi for shoulder pain and was referred to an orthopedist. (R. 498).

On February 15, 2013, Plaintiff sought treatment at Mercy Hospital of Buffalo ("Mercy") emergency room with leg swelling (R. 484), where Gerald Joyce, M.D. ("Dr. Joyce"), reviewed an ultrasound of Plaintiff's left leg that revealed extensive left leg DVT. (R. 489).

On February 26, 2013, Plaintiff visited Dr. Gbadamosi and reported night sweats, blurred vision, left shoulder pain, anxiety and depression. (R. 503). Dr. Gbadamosi

---

[8] Bipartite patella is a genetic condition where the patella (kneecap) is composed of two separate bones instead of being fused together.

diagnosed Plaintiff with femoral vein DVT, elevated blood pressure without hypertension and shoulder pain, and prescribed Coumadin (blood thinner). (R. 504).

On April 2, 2013, Dr. Nagra completed a mental residual functional capacity questionnaire on Plaintiff, diagnosed Plaintiff with major depressive disorder, hypertension, asthma, financial stressors, noted that Plaintiff's prognosis was guarded (R. 491), and evaluated Plaintiff with serious limitations to remembering work-like procedures, understanding, remembering, and carrying out very short and simple instructions, maintaining attention for two hour periods of time, sustaining an ordinary routine without special supervision, working in proximity to others without being unduly distracted, making simple work-related decisions, completing a normal workday or workweek with interruption from psychologically based symptoms, performing at a consistent pace with an unreasonable number of rest periods, dealing with normal work stress, and being aware of and taking precautions to normal work hazards, and dealing with the stress of semi-skilled and skilled work. (R. 493-94). Dr. Nagra further reported that Plaintiff's psychiatric condition exacerbated Plaintiff's experience of pain, and that Plaintiff would likely miss more than four days[9] of work each month and was unable to engage in full-time work on a competitive basis. (R. 495).

On May 13, 2103, Physician Assistant Shane Griffin ("P.A. Griffin"), completed a consultative orthopedic examination on Plaintiff for shoulder pain and evaluated Plaintiff's left shoulder with a positive Hawkins[10] impingement, positive Neer[11] test, and

---

[9] *See Pembroke v. Colvin*, 2014 WL 1679419, at *10 (W.D.N.Y. Apr. 28, 2014) (vocational experts agree that missing four days of work per month precludes substantial gainful employment) (citing cases).
[10] A Hawkins test uses diagnostic manipulation of an individual's that forces internal rotation to detect subacromial (shoulder space) impingement syndrome of the shoulder.
[11] A Neer test uses diagnostic manipulation to detect impingement of an individual's rotator cuff.

a positive Speed's[12] test.  P.A. Griffin recommended Plaintiff undergo an MRI scan of Plaintiff's left shoulder.  (R. 515).

## DISCUSSION

### 1.    Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant.  *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

### A.    Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

---

[12] A Speed's test uses a manipulative technique to diagnose an individual's bicep tendon.

judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's[13] opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e); 416.920(e).  If

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson*, 402 U.S. at 410.

## B.    Substantial Gainful Activity

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In the instant case, the ALJ determined that Plaintiff had not

engaged in substantial gainful activity since October 11, 2011, the date of Plaintiff's application for benefits. (R. 17). Plaintiff does not contest this determination.

**C.** **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of left shoulder pain, DVT, and major depressive disorder, that Plaintiff's knee complaints and asthma were not severe impairments, and that Plaintiff did not have an impairment or combination of impairments as defined under 20 C.F.R. § 404.920(c). (R. 17-19).

Plaintiff contends that the ALJ's step two disability finding constitutes error, as the ALJ's failure to consider Plaintiff's knee injury and asthma as severe impairments resulted in a flawed residual functional capacity assessment of Plaintiff. Plaintiff's Memorandum at 14-17. In support of Plaintiff's contention, Plaintiff points to evidence of Plaintiff's knee impairment that includes Plaintiff's October 2009 X-ray that revealed "multiple fragmentation in the superolateral aspect [of Plaintiff's] patella," Plaintiff's

December 2009 X-ray that revealed a Baker's cyst and probable effusion (R. 279-81), a diagnosis of patellar trauma on January 25, 2010 (R. 304), an MRI of Plaintiff's left knee completed in February 10, 2010, that showed a chronic anterior ACL tear (R. 306), and Plaintiff's January 3, 2013, X-ray that revealed bipartite patella with no acute fracture of Plaintiff's right knee. Plaintiff's Memorandum at 14-15. Plaintiff further contends that substantial evidence in the record supports that Plaintiff's asthma is a severe impairment under step two of the disability analysis. Plaintiff's Memorandum at 16. Defendant maintains that no error results from the ALJ's step two findings, as Plaintiff's patellar malformation did not result in any functional limitations, that Plaintiff's diagnoses of asthma were based on Plaintiff's self-reported history, that Plaintiff's lung X-rays showed negative results for asthma, and that no other evidence supports that Plaintiff experienced an exacerbation of symptoms from his asthma. Defendant's Memorandum at 21.

Step two of the disability review analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3␣d 1019, 1030 (2d Cir. 1995), and findings of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856). Step two severity determinations require ALJs to complete a careful evaluation of medical findings to inform the ALJ's judgment as to each impairment's limiting effects on the claimant's physical and mental abilities to perform basic work activities, using medical evidence to assess the effects the claimant's impairments have on the claimant's ability

to complete basic work activities.  *See* S.S.R. 85-28, 1985 WL 56856, at *4 (1985).  An ALJ's failure to account for a claimant's impairment does not normally require remand where substantial evidence supports the mere presence of the impairment, and the ALJ accounts for the impairment within the ALJ's residual functional capacity assessment. *See Lowe v. Colvin,* 2016 WL 624922, at *2 (W.D.N.Y. Feb. 17, 2016).  The regulation requires ALJs to consider impairments that a claimant states that he or she has, or those "about which [the ALJ] receive[s] evidence" *see* 20 C.F.R. § § 404.1512(a); 416.912(a), and in this case the ALJ found that Plaintiff's musculoskeletal examinations were normal, that Plaintiff did not complain of knee pain during an evaluation with Excelsior Orthopedics on May 13, 2013, and that no evidence supports that Plaintiff was diagnosed with or experienced any exacerbation of Plaintiff's asthma.  (R. 17).

On January 28, 2010, Dr. Sirotenko recommended that Plaintiff avoid respiratory triggers that would exacerbate Plaintiff's asthma.  (R. 275).  On December 26, 2012, Dr. Gbadamosi refilled Plaintiff's Albuterol medication for Plaintiff's asthma, and diagnosed Plaintiff with knee pain and asthma.  (R. 424-25).  On May 13, 2013, during a left shoulder examination with P.A. Griffin, Plaintiff reported wheezing, joint pain, stiffness and weakness.  (R. 515).  The ALJ's finding that Plaintiff's knee impairment and asthma were not severe impairments under step two of the disability review process is thus without support of substantial evidence as contrary to the opinions of Plaintiff's treating physicians, and the ALJ failed to justify rejecting such opinions in accordance with 20 C.F.R. § 404.1520.  Such error is harmless, however, as the ALJ correctly proceeded through the remaining sequential steps of the disability analysis.  *See Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013) (harmless error where ALJ erred in

excluding severe impairments from step two of the disability analysis but proceeded to evaluate claimant's disability through remaining steps of sequential analysis).  Plaintiff's motion on this issue is therefore without merit and does not require remand.

**D.      Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Major dysfunction of a joint), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective disorders), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety related disorders).  In this case, the ALJ found that Plaintiff's impairments did not meet or equal § § 1.02, 12.04, and 12.06 of the listed impairments.  Plaintiff does not contest the ALJ's findings under step three of the disability review process.

**Treating Physician's Rule**[14]

Plaintiff alleges that the ALJ violated the treating physician rule by assigning little weight to the opinion set forth in Dr. Nagra's mental residual functional questionnaire completed on April 2, 2013. Plaintiff's Memorandum at 17-21. Specifically, Plaintiff alleges that the ALJ failed to failed to provide "good reasons" for the weight assigned to Dr. Nagra's opinion as required under 20 C.F.R. § 416.927(c)(§ 416.927(c)"), improperly found that Dr. Nagra provided mental health counseling to Plaintiff on only one occasion, and that Dr. Nagra's opinion was inconsistent with Plaintiff's hospital discharge records and Plaintiff's visits to orthopedic specialists. Plaintiff's Memorandum at 19-21. Defendant maintains that Dr. Nagra provided treatment to Plaintiff only twice before completing Plaintiff's mental residual functional capacity questionnaire on April 2, 2013, and that Dr. Nagra's assessment of Plaintiff's mental health was inconsistent with substantial evidence in the record. Defendant's Memorandum at 22-23.

It is the ALJ's responsibility to weigh the record evidence and determine which medical source opinion is supported by medical evidence in the record and deserving of more weight. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (where medical opinions are inconsistent, ALJ's have discretion to apportion weight to the opinions). Under 20 C.F.R. § 416.927(c), ALJs are required to consider the following factors in

---

[14] Recent revisions to the Code of Federal Regulations have eliminated the treating physician's rule effective March 27, 2017. As here, such revisions are not applicable to decisions issued prior to that date. *See* 20 C.F.R. § 404.1527 (Evaluating opinion evidence for claims filed before March 27, 2017).

weighing medical opinions of treating and non-treating physicians, and provide reasons

for the weight assigned to each medical opinion:

> (1) Examining relationship
> (2) Treatment relationship
> (3) Supportability
> (4) Consistency
> (5) Specialization
> (6) Other relevant factors

20 C.F.R. § 416.927(c).


As relevant, 20 C.F.R. § 416.927(e)(2)(ii) provides

> When an administrative law judge considers findings of a State agency medical
> or psychological consultant or other program physician, psychologist; or other
> medical specialist, the administrative law judge will evaluate the findings using
> the relevant factors in paragraphs (a) through (d) of this section, such as the
> consultant's medical specialty and expertise in our rules, the supporting evidence
> in the case record, supporting explanations the medical or psychological
> consultant provides, and any other factors relevant to the weighing of the
> opinions.

Accordingly, the treating physician rule provides the framework for reviewing

agency consultant findings. The undersigned proceeds to review Plaintiff's allegations

under the rules set forth under § 416.927(c), the treating physician's rule.

Plaintiff asserts that the ALJ violated the treating physician rule by not discussing

each of the six factors set forth under § 416.927(c) is error.  However, the ALJ afforded

little weight to Dr. Nagra's medical source statement with regard to Plaintiff's mental

limitations, specifically including Dr. Nagra's opinion that Plaintiff would likely miss more

than four days of work a month and was unable to engage in competitive employment,

*see* Discussion, *supra*, at 8, as such assessment

was based on only an initial assessment of [Plaintiff] and [Plaintiff] only started treatment a month before . . . [and Dr. Nagra's opinion] was contradicted in several respects. Dr. Nag[*sic*] stated [Plaintiff] could not pay attention yet the mental status examination . . . done a year earlier, said [Plaintiff] had good memory and normal attention and concentration. Examination of the [Plaintiff] [*sic*] at ECMC in April 2012 noted good eye contact, clear speech and goal directed thoughts. [Plaintiff's] insight and judgment was fair and he only reported feeling a little depressed . . . during [Plaintiff's] examination at Excelsior Orthopedics in May 2013, [Plaintiff] reported having anxiety and depression, but he denied memory loss or sleep disturbance.

(R. 23).

As evidenced by the foregoing, the ALJ's assignment of little weight to the opinion of Dr. Nagra complies with the requirements under the treating physician's rule and Plaintiff's motion on this issue is therefore without merit.

Should the district judge disagree with the foregoing, determining instead that the ALJ violated the treating physician rule such that Plaintiff should be considered disabled, upon remand, the ALJ should be required to make a finding as to whether Plaintiff's alcohol and drug abuse was a key factor contributing to Plaintiff's disability such that Plaintiff should nevertheless not be considered disabled. *See Wettlaufer v. Colvin,* 203 F. Supp.3d 266, 278 (W.D.N.Y. Aug. 25, 2016) (no disability where evidence supports that alcohol was a key factor contributing to Plaintiff's disability).

**Residual Functional Capacity**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden

shifts to the Commissioner to show that despite the claimant's severe impairment, the

claimant has the residual functional capacity to perform alternative work, 20 C.F.R.

§ 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is

able to perform in light of the claimant's physical capabilities, age, education, experience,

and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the

Commissioner must first show that the applicant's impairment or impairments are such

that they nevertheless permit certain basic work activities essential for other employment

opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the

Commissioner must demonstrate by substantial evidence the applicant's "residual

functional capacity" with regard to the applicant's strength and "exertional capabilities."

*Id.* An individual's exertional capability refers to the performance of "sedentary," "light,"

"medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In this case, the

ALJ determined that Plaintiff had the residual functional capacity to perform a full range

of work at all exertional levels and perform simple, unskilled work with occasionally

detailed tasks and occasional interaction with the public. (R. 26).

ALJs are "entitled to weigh all of the evidence available to make an RFC finding

that [i]s consistent with the record as a whole," and residual functional capacity

assessments may not perfectly correspond with any individual medical opinion. *See*

*Matta v. Astrue,* 508 Fed. App'x 53, 56 (2d Cir. 2013). "When determining a claimant's

RFC, the ALJ is required to take the claimant's reports of pain and other limitations into

account, but is not required to accept the claimant's subjective complaints without

question; he may exercise discretion in weighing the credibility of the claimant's

testimony in light of the other evidence." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).

In this case, the ALJ determined that Plaintiff was able to perform light work with a limitation to having the option to sit/stand every 2 to 3 hours, occasionally kneel, crawl and stoop with no overhead reaching, and occasional interaction with the public. (R. 19). Plaintiff contends that the ALJ's residual functional capacity assessment is without substantial evidence as the ALJ's rejection of Dr. Nagra's opinion creates a gap in the record that requires the ALJ to obtain a consultative examination. Plaintiff's Memorandum at 22-24. Plaintiff further contends that the ALJ's limitation to Plaintiff's ability to sit/stand for 2 to 3 hours was also error as Dr. Nagra provided the sole opinion on Plaintiff's mental functioning. Plaintiff's Memorandum at 21. Specifically, Plaintiff relies on the rulings set forth in *Cosnyka v.* Colvin ("*Cosnyka")*, 576 Fed. App'x 43, 36 (2d Cir. 2014), and *Alberalla v.* Colvin ("*Alberalla*"), 2014 WL 4199689, at *12 (W.D.N.Y. Aug. 22, 2014), to support that the ALJ was required to accept Plaintiff's testimony that Plaintiff was unable to sit or stand for extended periods of time as no other evidence in the record exists to contradict Plaintiff's testimony. Plaintiff's Memorandum at 25. Defendant maintains that the ALJ's residual functional capacity assessment was supported by sufficient evidence such that the ALJ was not required to obtain a consultative examination. Defendant's Memorandum at 23. Plaintiff's reliance on the ruling in *Cosnyka* is misplaced because the facts set forth in *Cosnyka* are not consistent with the facts in this case. In *Cosnyka*, the ALJ credited an orthopedic examiner's opinion that the claimant would require regular comfort breaks, *Cosnyka*, 576 Fed. App'x. at 46, which the ALJ interpreted to mean that the claimant would require a six-

minute break every hour. The Second Circuit remanded *Cosnyka* because the record, including the medical evidence and the claimant's testimony, failed to support the ALJ's findings on Plaintiff's limitations to work.

In this case, both the medical evidence in the record and Plaintiff's testimony support the ALJ's residual functional capacity assessment. The ALJ afforded significant weight to Dr. Sirotenko's opinion that Plaintiff had mild limitations to pushing, pulling and overhead activities, and that Plaintiff had a moderate limitation to repetitive kneeling, bending, squatting, climbing stairs, inclines or ladders and should avoid respiratory irritants. (R. 21, 23). Plaintiff testified that on a good day he was able to stand for five hours without requiring a break, and was able to stand for two to three hours at a time on a bad day. (R. 48). Unlike *Cosnyka*, where the only evidence to support the ALJ's residual functional capacity assessment was the plaintiff's testimony, here, Dr. Sirotenko's findings also support the ALJ's residual functional capacity assessment that limited Plaintiff to sit/stand for two to three hours at a time. *See Kirkland v. Colvin,* 2016 WL 850909, at *12 (W.D.N.Y. Mar. 4, 2016) (it is ultimately the duty of the ALJ to formulate the RFC after evaluating the opinion evidence, treatment records, and the claimant's testimony).

Plaintiff's reliance on the reasoning set forth in *Alberalla* is also misplaced. In *Alberalla,* the ALJ's residual functional capacity assessment relied solely on the plaintiff's testimony that was otherwise unsupported by medical evidence in the record. In this case, the ALJ's residual functional capacity assessment was based on medical evidence in the record, *i.e.*, Dr. Sirotenko's evaluation and Plaintiff's testimony on his limitations. *See Davis v. Colvin*, 2017 WL 745866, at *11 (W.D.N.Y. Feb., 27, 2017) (no

error where ALJ assessed claimant with one hour standing limitation that did not precisely align with a medical opinion where claimant's daily activities, treatment history and consultative medical evaluation support the limitation). Plaintiff's motion on this issue is therefore without merit.

## E. <u>Suitable Alternative Employment in the National Economy</u>

In addition to determining whether a disability claimant has the residual functional capacity to return to work, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[15] *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the

---

[15] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

Plaintiff contends that the ALJ erred by not including limitations to Plaintiff's ability to interact with co-workers and supervisors in the hypothetical posed to the VE during Plaintiff's administrative hearing. Plaintiff's Memorandum at 27. Defendant maintains that substantial evidence supports Plaintiff's ability to interact with co-workers and the public as Plaintiff testified that Plaintiff had no problem interacting with friends, family, neighbors and people in authority. Defendant's Memorandum at 26 (citing R. 195, 197).

During the administrative hearing held on April 24, 2013, the ALJ posed a hypothetical question to the VE of whether an individual like Plaintiff, but limited to occasional interaction with the public, capable of occasionally kneeling, crawling, and stooping with the option to sit or stand, and limited to light work would be able to perform any jobs in the regional or national economies (R. 58), and asked the VE to provide a list of jobs that such an individual would be capable of performing, which the VE opined would include the positions of photocopying machine operator, unskilled work with a light exertional level, with 66,280 jobs available in the national economy and 430 job positions available in the regional economy (R. 59), and housekeeping cleaner, unskilled, light work with 877,980 jobs available in the national economy and 3,200 job positions available in the regional economy. (R. 59). The ALJ then altered the hypothetical to include the additional limitation of no overhead reaching with either upper extremity, to which the VE opined that Plaintiff would continue to be able to perform the job of photocopying machine operator, and the job of small parts

assembler, an unskilled job, with 235,910 jobs available in the national economy and 150 job positions available in the regional economy.  (R. 61).

Plaintiff relies on *Tilles v. Commissioner of Social Security* ("*Tilles*"), 2015 WL 1454919, at *37 (S.D.N.Y. Mar. 31, 2015), to support Plaintiff's contention that the ALJ erred in not discussing Plaintiff's ability to interact with co-workers and supervisors in addition to Plaintiff's ability to interact with the general public.  Plaintiff's Memorandum at 27.  This argument is unavailing.  The court in *Tilles* noted that remand is not required in instances where the ALJ does not make specific findings to the claimant's ability to interact with the general public, co-workers, and supervisors, but upon consideration of the entire case record, the same finding on the claimant's ability to work would result. *Tilles*, 2015 WL 1454919, at *37.  As discussed, Discussion, *supra*, at 16-18, the ALJ's residual functional capacity assessment that included a limitation to occasional interaction with the general public, and no limitation to interact with co-workers or supervisors is supported by substantial evidence in the record.  The VE's testimony based on such residual functional capacity assessment is therefore also without error. *See Kennedy v. Astrue*, 343 Fed. Appx. 719, 722 (2d Cir. 2009) (no remand where hypothetical questions by ALJ are based on residual functional capacity assessment supported by substantial evidence).  Plaintiff's motion on this issue is without merit.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion (Doc. No. 15) should be GRANTED; Plaintiff's motion for judgment on the pleadings (Doc. No. 8) should be DENIED, and the Clerk of the Court should be instructed to close the file.

Respectfully submitted,

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 12, 2017
                   Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

*/s/ Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      September 12, 2017
            Buffalo, New York